UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

ROLEX WATCH U.S.A., INC.,                    :

                        Plaintiff,       :

        -against-                        :

REPLICASTOREONLINE.WEBS.COM, et al.,        :

                    Defendants.      :

----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 26 '13

11 CV 01488 (LAP) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:**

This trademark infringement and counterfeiting case is currently before this Court by reference of the Honorable Leonard B. Sand (to whom the case was originally assigned), for a report and recommendation as to the amount of damages that should be awarded to plaintiff Rolex Watch U.S.A., Inc. ("Rolex") upon the default of defendants Barbara Elaine Howze, Johnny Howze, and Pazlazzi Karika Howze, individually and doing business as replicastores.webs.com, replicastoreonline.webs.com, coolprices.webs.com, qualitywatches.webs.com, qualitywristwatches.webs.com (collectively, "Defendants"). For reasons set forth below, I recommend that Rolex be awarded a total of $1.5 million in damages, representing $150,000 for Defendants' infringement and counterfeiting of each of the 10 trademarks that are the subject of this action.

## BACKGROUND

### A.      Factual Background

As set out in the Plaintiff's Second Amended Complaint, Proposed Findings of Fact and Conclusions of Law, and supporting Declaration,[1] the events that gave rise to this action may be summarized as follows.

Rolex is the exclusive distributor of Rolex watches in the United States, responsible for marketing and selling Rolex watches, watch bracelets and related products.  (2d Am. Compl. ¶¶ 13, 15.)  On December 11, 2002, Rolex's counsel sent a cease-and-desist letter to the email address newrockhill@yahoo.com, which was listed as the contact email for a posting on www.craigslist.org that was, at that time, offering Rolex replica watches for sale.  (*Id.* ¶ 27.)   On February 8, 2010, Rolex then discovered that the website replicastores.webs.com was being used to advertise distribute, promote, offer for sale, and sell watches bearing counterfeits of Rolex registered trademarks, and that the website explicitly advertised these watches as Rolex replicas. (*Id.* ¶ 25.)  Rolex sent a cease-and-desist letter to the email address provided on the website, which was the same email address as Rolex had found on the craigslist posting, two months earlier.  (*Id.* ¶ 26.)  In response to these cease-and-desist letters, Defendants wrote to Rolex's counsel, stating their desire that counsel not contact them anymore.  (*Id.* ¶ 28.)  Defendants' website, however, remained active.  (*Id.* ¶ 29.)

The website Replicastores.webs.com was apparently created with tools and templates provided by the website building company Webs, Inc. ("Webs").  (*See* www.webs.com.)  On

---

[1] *See* Second Amended Complaint, dated Aug. 8, 2011 ("2d Am. Compl.") (Dkt. 15); Proposed Findings of Facts and Conclusions of Law, dated Feb. 27, 2013 ("Proposed Findings") (Dkt. 31); Declaration of Walter-Michael Lee, Esq., dated Feb. 27, 2013 ("Lee Decl.") (Dkt. 32).

March 4, 2011, still unaware of the identity of the Defendants, Rolex commenced this action against Webs and "Jon Does" 1-10, individually and doing business as replicastore.webs.com. (Proposed Findings ¶ 24.) At Rolex's request, Webs disabled the website replicastore.webs.com. (*Id.* ¶ 27.) Then, on March 24, 2011, Rolex discovered postings on www.craigslist.org that directed customers to another website, replicastoresonline.webs.com. (2d Am. Compl. ¶ 38.) This new website was identical to replicastores.webs.com, the site that had just been disabled. (*Id.* ¶ 39.) At Rolex's request, Webs also disabled replicastoreonline.webs.com. (*Id.* ¶ 40.)

Despite the efforts by Rolex, Defendants continued their unlawful activities. In June and August, 2011, Rolex discovered further postings on www.craiglist.org. (*Id.* ¶¶ 41, 46.) These postings directed customers to a third and then a fourth essentially identical website, qualitywatches.webs.com and qualitywristwatches.webs.com. (*Id.* ¶¶ 41-42, 46-47.) Discovery later revealed that Defendants also owned and operated a fifth website, coolprices.webs.com, which was also being used to sell counterfeit Rolex products. (*Id.* ¶ 49.)

On August 16, 2011, shortly after Rolex named Defendants in its Second Amended Complaint, defendants Palazzi and Barbara Howze contacted Rolex's counsel. (*See* Proposed Findings ¶ 39.) Using profanities, these two defendants admitted to counterfeiting and infringing Rolex's trademarks, but informed Rolex's counsel that they would not be ceasing their illegal activities. (*Id.*) On September 30, 2011, Palazzi Howze called Rolex's counsel more than 10 times, using profanities and, according to counsel, threatening to slap him, to beat him up, and even to kill him. (*Id.* ¶ 42; *see also* Lee Decl. ¶ 5.)

Defendants never answered Rolex's Second Amended Complaint, and a default judgement was entered against them on November 2, 2011. (Dkt. 27.)

Subsequently, according to Defendants, the Chester, South Carolina, Police Department executed a search warrant on Defendants' residence. (*See* Proposed Findings ¶ 45.) On January 2, 2012, the police reportedly seized, pursuant to this warrant, five computers, documents evidencing the sale of counterfeit Rolex watches, and $16,790 in cash. (*Id.*) A few months later, according to a Declaration submitted by Rolex's counsel, Walter Michael-Lee, Esq., Palazzi Howze contacted the Office of the Chief of the Chester Police Department to demand that the seized cash be returned. (*See* Lee Decl. ¶ 12.) Upon being told that the cash could not be returned, Palazzi Howze purportedly used profanity and made threats against a representative of the police chief's office. (*Id.*) The Chester Police Department then secured and executed a warrant for Palazzi Howze's arrest for making "threatening phone calls." (*Id.*) Rolex represents that, given Defendants' threats against its counsel and other individuals, the Chester Police Department has provided Homeland Security with several police reports, and these agencies are now investigating potential additional criminal charges against defendant Palazzi Howze. (*Id.* ¶ 47.)

## B.   Procedural History

On November 2, 2012, the Court (Sand, J.) granted Rolex a default judgment against Defendants for willful and malicious trademark infringement and counterfeiting; that judgment included a permanent injunction and an award of $28,973 for attorney fees and $350 for costs. (*See* Dkt. 27.) Judge Sand then referred the case to this Court to issue a report and recommendation as to the appropriate amount of damages to be awarded to Rolex on the default judgment. (*See* Dkt. 28.)

On January 29, 2013, this Court issued a Scheduling Order instructing Rolex to submit proposed finding of fact and conclusions of law with respect to damages. (*See* Dkt. 30.) The

4

Order gave Defendants a deadline of March 29, 2013, to submit a response or request an in-court

hearing.  The Order warned Defendants that, if they failed to respond, it would be this Court's

intention to make a recommendation concerning damages on the basis of Rolex's written

submissions alone.  As the Court has received no response from Defendants, this Report and

Recommendation is based solely on Rolex's submissions.

**DISCUSSION**

I.    **APPLICABLE LEGAL STANDARDS**

Rolex has elected to seek statutory damages under Section 1117(c) of the Lanham Act,

15 U.S.C. §§ 1051 *et seq.*, which provides as follows:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –
>
> (1)    not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2)    if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).[2]

---

[2] This statutory-damages provision of the Lanham Act was created by the Anticounterfeiting Protection Act of 1996, Pub. L. 104-153, and was later amended by the Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. L. 110-403 (increasing maximum damages allowable under § 1117(c)(2) from $1 million to $2 million).

5

Under Section 1117(c), the holder of a registered trademark may elect to recover statutory damages in lieu of actual damages. Section 1117(c) supplements Sections 1117(a)-(b), which provide for compensatory and punitive damages that are explicitly tied to and limited by the actual profits generated or damages caused by the illegal activity. *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999). Specifically, Section 1117(a) instructs courts to award damages equal to the defendant's profits, any damages sustained by the plaintiff, and the costs of the action. Section 1117(b) then directs courts to treble those damages where the defendant's conduct was willful. Congress added Section 1117(c) in 1996 (*see* n.2, *supra*), in recognition of the fact that trademark infringers and counterfeiters frequently do not keep and sometimes purposely destroy sales records, making a determination of actual damages difficult, if not impossible. *See Guess?, Inc. v. Gold Center Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998) (citing S. Rep. No. 177, 104th Cong., 2d Sess. (1995)).

As noted above, when a defendant's conduct is determined to have been willful, courts may, under Section 1117(2)(c), award a maximum damage amount of "$2,000,000 per mark per type of counterfeit goods sold." Section 1117(c)(2) provides no specific criteria for determining the amount of statutory damages that may be awarded, but instead simply authorizes such awards "as the court considers just," thereby affording the courts "broad discretion" to determine the amount of damages appropriate to achieve the Lanham Act's dual goals of compensation and deterrence. *See Sara Lee*, 36 F. Supp. at 166.

To achieve the goals of compensation and deterrence when the defendant's profits and the plaintiff's losses are difficult to determine directly, courts in this circuit have identified five relevant factors, borrowed from copyright law, to consider in assessing trademark damages: (1) the size of the defendant's counterfeiting operation; (2) the extent of the defendant's

6

cooperation during discovery to help estimate actual damages; (3) the degree of willfulness shown by the defendant; (4) the need to deter the defendant; and (5) deterrence of other, would-be counterfeiters. *See, e.g., Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09 CV 4810 (RRM) (ALC), 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011), *report and recommendation adopted by* 2011 WL 1130457, at *5  (Mar. 28, 2011); *Nike, Inc. v. Top Brand Co.*, No. 00 CV 8179 (KMW) (RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006), *report and recommendation adopted by* 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006); *Sara Lee*, 36 F. Supp. at 166.  These factors may bear upon one another.  Where, for example, a defendant's refusal to cooperate in discovery creates uncertainties regarding the size of its counterfeiting operation, it may be appropriate to resolve such uncertainties against the defendant. *See Sara Lee*, 36 F. Supp. at 170.  Similarly, where a defendant has engaged in willful misconduct, increased damages may be necessary to deter that defendant from future misconduct. *See id.*; *see also, e.g., Pharel*, 2011 WL 1131401 at *5 ("Where defendant is shown to have acted willfully, a statutory damages award should incorporate . . . a punitive component to discourage further wrongdoing by defendants and others." (quoting *Jones*, 2002 WL 596354 at *5)).

Ultimately, the Court must, in its discretion, award damages that are sufficient to compensate the plaintiff and deter further unlawful activity by the defendant and others, without affording the plaintiff an unjustified windfall. *See, e.g., Rolex Watch U.S.A., Inc. v. Brown*, 01 Civ. 9155 (JGK) (AJP), 2002 WL 1226863 at *2 (S.D.N.Y. June 5, 2002) (instead of recommending requested damages of $8 million, recommending total award of $1 million, as sufficient to compensate and deter), *report and recommendation adopted by* Order, dated Sept. 16, 2002 (Dkt. 16 in No. 01 Civ. 9155); *see also Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *6 (S.D.N.Y. Apr. 17, 2002) (declining to

recommend awarding plaintiff $1 million per mark ($10 million total), even where defendant continued illegal activities after cease-and-desist letters and initiation of legal proceedings, because $50,000 per mark ($500,000 total) sufficed to compensate and deter), *report and recommendation adopted by* Order, dated June 14, 2002 (Dkt. 47 in No. 99 Civ. 2359); *Rolex Watch U.S.A., Inc. v. Vioers*, No. 99 Civ. 11328 (NRB) (JCF), 2000 U.S. Dist. LEXIS 22127, at *7-8 (S.D.N.Y. Aug. 10, 2010) (finding that, even where defendant's conduct was "brazen[]," in the absence of evidence regarding profits, damages should be limited to what is necessary to compensate and deter), *report and recommendation adopted by* 2000 U.S. Dist. LEXIS 22128 (S.D.N.Y. Aug. 25, 2000).

## II.     ROLEX'S REQUEST FOR DAMAGES

Citing a few recent cases in which the maximum statutory damages were awarded, Rolex argues that Defendants' willful conduct calls for such an award in this case. (*See* Proposed Findings ¶ 57.) Thus, Rolex seeks an award, under Section 1117(c)(2), of $2 million for each of the 10 marks infringed, for a total damages award of $20 million. Despite Defendants' egregious behavior, however, a lesser award would be more appropriate here, and more in keeping with decisions of this and other courts within this circuit, in cases most comparable to this one.

In this regard, the Court notes that most of the cases on which Rolex relies (*see* cases cited in Proposed Findings ¶ 56) involved unlawful conduct that took place on a significantly larger scale than the conduct at issue here. For example, in *True Religion Apparel, Inc. v. Xiaokang Lei*, the plaintiff had brought suit against unnamed holders of approximately 100 domain names, in a case that was alleged to involve sophisticated internet fraud and massive counterfeiting operations. *True Religion Apparel*, No. 11 Civ. 8242 (HB) (S.D.N.Y.

8

Mar. 12, 2012) (Default Judgment and Permanent Injunction, at Dkt. 31); *see also, e.g., Burberry Ltd. v. Doe*, No. 11 Civ. 08306 (TPG) (S.D.N.Y. May 17, 2012) (Default Judgment and Permanent Injunction, at Dkt. 14) (involving more than 100 named and unnamed defendants).  In addition, the cases cited by Rolex, in which the courts awarded statutory damages at or near the maximum amounts allowed, generally involved active attempts by the defendants to deceive customers into believing that they were buying genuine merchandise from official brand websites.  *See, e.g., Burberry,* slip op. at 3-4 (implicating dozens of websites with web addresses incorporating the brand name); *Hermes Int'l v. Doe,*  No. 12 Civ. 1623 (DLC), slip op. at 6 (S.D.N.Y. Apr. 30, 2012) (Default Judgment and Permanent Injunction, at Dkt. 14) (same).  In contrast, the present case involves only five websites, on which the watches being advertised for sale by Defendants were explicitly identified as "replicas."

More closely analogous to this case are the cases cited above, in which Rolex – the same party as has brought suit here – sued other infringers who, either as individuals or in small groups, sold, over the Internet, some number of watches that they represented to be copies of Rolex watches, not the genuine article.  In each of these cases, as in this one, the defendants engaged in willful violations of the Lanham Act, in that, at a minimum, they failed to cease their infringing and/or counterfeiting activities despite cease-and-desist letters and litigation.  Yet, in each of these cases, the courts rejected Rolex's request for millions of dollars in statutory damages, instead awarding total damages of $1 million or less.  *See Pharel*, 2011 WL 1131401, at *4, 6 (rejecting Rolex's request for a total award of $8 million ($1 million for each of the eight marks infringed) on the defendant's default, and instead recommending total award of $1 million (equivalent of $125,000 per mark infringed)); *Brown*, 2002 WL 1226863 at *3 (rejecting Rolex's request for $1 million per mark, and instead recommending total award of $1 million for

9

infringement of multiple marks); *Jones*, 2002 WL 596354, at *6 (rejecting Rolex's request for $1 million per mark, and instead recommending total award of $500,000 for infringement of nine marks (equivalent of $55,556 per mark)); *Rolex v. Voiers*, No. 99 Civ. 11328 (NRB)(JCF), 2000 U.S. Dist. LEXIS 22127, at *8 (S.D.N.Y. Aug. 10, 2000) (rejecting Rolex's request for $1 million per mark, and instead recommending total award of $1 million for infringement of nine marks (equivalent to $111,111 per mark)).[3]  In each of these cases, the defendants' infringing activities were materially similar to the activities challenged in the case now before this Court, but the court determined that damages far below the statutory maximums requested by Rolex were sufficient to compensate Rolex for any losses caused by those activities, and to serve the additional goal of deterrence.

This Court takes particular guidance from *Pharel*, the most recent reported decision in a suit in which Rolex sought statutory damages under the Lanham Act.  In *Pharel*, the defendant continued operating three websites selling counterfeit Rolex watches after receiving two cease-and-desist letters and even after legal proceedings were initiated.  *See Pharel*, 2011 WL 1131401, at *1-2.  While the court agreed that the defendant's willful conduct was relevant in determining damages, it assessed damages at one-eighth the amount Rolex requested, declining to award a higher amount in the "absence of documentation of the Defendants' profits, evidence of sales from legitimate retailers, or fraud or misconduct before the tribunal."  *Id.*, at *5; *see also Vioers*, 2000 U.S. Dist. LEXIS 22127, at *8 (declining to award maximum amount of statutory damages in the absence of evidence regarding size of defendants' operations or of sales in legitimate retail stores).

---

[3] At the time of most of these cases, Rolex's request for $1 million per infringed mark represented a request for the maximum allowable statutory damages.  (*See* n.2, *supra*.)

Here, the relevant factors do weigh in favor of a somewhat higher damages award than the $125,000 per mark that was awarded in *Pharel*.  Although there is no competent evidence in the record regarding the size of Defendants' counterfeiting operation,[4] Defendants' lack of cooperation and willfulness in this case went well beyond mere a failure to defend the case or to cease unlawful activities.  Based on Plaintiff's recounting of events, every time that Plaintiff was successful in shutting down one of Defendants' infringing websites, Defendants promptly created another, frustrating Plaintiff's efforts to police and protect its marks.  Of even greater concern is Plaintiff's report that Defendants actively sought to impede this action by making repeated, personal threats against Plaintiff's counsel, including threats of violence.  This type of behavior, as described by counsel in a declaration made under penalty of perjury, suggests that higher damages than those awarded in *Pharel* and the other prior Rolex cases are necessary here, as a punitive measure, to accomplish the objective of deterrence.[5]  *See Pharel*, 2011 WL 1131401 at *5 (noting appropriateness of punitive component of statutory damages award, where necessary for deterrence); *cf. Coach, Inc. v. Allen*, No. 11 Civ. 3590 (CM), 2012 U.S. Dist. LEXIS 100829, at *25-26 (S.D.N.Y. July 19, 2012) (noting that one of the defendants had previously been "sued for the same exact illegal conduct," and citing defendant's history of contumacious behavior as requiring a larger damages award to serve as a deterrent).

---

[4] The fact that police may have seized a number of computers and some cash has not been placed before the Court by any person with actual knowledge, and, in any event, such a seizure would not, in itself, reveal the extent of Defendants' unlawful activities.

[5] Although Plaintiff's counsel reports that defendant Palazzi Howse also made threats to law enforcement authorities, the Court will not consider this in connection with its damages analysis, as Plaintiff has not submitted an affidavit or declaration of any individual with personal knowledge of these additional purported threats.

Nonetheless, in this Court's view, Plaintiff's requested award of $20 million would still be excessive. Overall, after weighing all of the relevant factors and in light of both the particular facts of this case and the precedent described above, I recommend that Plaintiff be awarded the sum of $150,000 per infringing mark (*i.e.*, $25,000 per mark above what the court awarded in *Pharel*, both because of Defendants' repeated establishment of new websites to sell infringing goods, after earlier websites had been discovered and shut down, and because of the additional factor, present in this case, of threats to counsel), for a total damages award of $1.5 million on Defendants' default. I further recommend that this amount be awarded jointly and severally against each of the named Defendants.

## CONCLUSION

For all the reasons stated above, this Court recommends that Rolex be awarded statutory damages against Defendants, jointly and severally, in the amount of $150,000 thousand for each of the 10 trademarks infringed, for a total award of $1.5 million.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, United States Courthouse, 500 Pearl Street, Room 2200, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See*

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

      If the individual Defendants do not have access to cases cited herein that are reported

only on Westlaw or LEXIS, they may request copies from Plaintiff's counsel. *See* Local

Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and

other authorities cited therein that are unpublished or reported exclusively on computerized

databases] as are cited in a decision of the Court and were not previously cited by any party.").

Dated:  New York, New York
       July 26, 2013

                    Respectfully submitted,

                    DEBRA FREEMAN
                    United States Magistrate Judge

Copies to:

Hon. Loretta A. Preska, U.S.D.J.

Plaintiff's counsel (via ECF)

Ms. Barbara Elaine Howze
2453 North Dawson Drive
Chester, SC 29706

Mr. Johnny Howze
2453 North Dawson Drive
Chester, SC 29706

Mr. Palazzi Karika Howze
2453 North Dawson Drive
Chester, SC 29706